IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

FREDERICK LAMONT MOORE,           )
                                  )
                                  )
          Petitioner,             )
                                  )
v.                                )          No. 1:14-cv-01162-STA-jay
                                  )
SHAWN PHILLIPS,                   )
                                  )
          Respondent.             )

_____

ORDER DIRECTING CLERK TO MODIFY RESPONDENT AND UNSEAL MOTION,
DENYING MOTION FOR EXPERT ASSISTANCE AND COUNSEL,
DENYING § 2254 PETITION AND SUPPLEMENTAL PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

_____

Petitioner Frederick Lamont Moore has filed a *pro se* 28 U.S.C. § 2254 habeas corpus petition (the "Petition") (ECF No. 1), as well as a document asserting additional claims (the "Supplemental Petition") (ECF No. 31).  For the following reasons, the Petition and the Supplemental Petition are **DENIED**.[1]

## BACKGROUND

The background summary is drawn from the state court record (ECF No. 14; ECF No. 40; ECF No. 41; ECF No. 42; ECF No. 43) and the decisions in Moore's direct appeal, *State v. Moore*, No. W2009-01266-CCA-R3-CD, 2011 WL 856379, at *1 (Tenn. Crim. App. Mar. 9, 2011), *perm. appeal denied* (Tenn. July 14, 2011) ("*Moore I*"), appeal from the denial of post-conviction relief, *Moore v. State*, No. W2012-02189-CCA-R3-PC, 2013 WL 6001928, at *1 (Tenn. Crim. App. Nov.

_____

[1]  The Clerk is **DIRECTED** to substitute Shawn Phillips for Mike Parris as Respondent. *See* Fed. R. Civ. P. 25(d).

6, 2013), *perm. appeal denied* (Tenn. Mar. 5, 2014) ("*Moore II*"), appeal from the denial of state habeas corpus relief, *Moore v. Parris*, No. W2014-02128-CCA-R3-HC, 2015 WL 1454356, at *1 (Tenn. Crim. App. Mar. 27, 2015) ("*Moore III*"), appeal from the denial of Moore's first petition for writ of error coram nobis, *Moore v. State*, No. W2014-01740-CCA-R3-ECN, 2015 WL 1647961, at *1 (Tenn. Crim. App. Apr. 9, 2015) ("*Moore IV*"), denial of his second motion to reopen his post-conviction proceeding (ECF No. 41-2 at 63-35) ("*Moore V*"), and appeal from the denial of his second petition for writ of error coram nobis, *Moore v. State*, No. W2015-00626-CCA-R3-ECN, 2015 WL 6873181, at *1 (Tenn. Crim. App. Nov. 6, 2015), *perm. appeal denied* (Tenn. May 9, 2016) ("*Moore VI*").

In 2009, a Madison County, Tennessee, grand jury charged Moore with first degree premeditated murder, first degree murder in perpetration of aggravated kidnapping, aggravated kidnapping, and two counts of tampering with evidence. (ECF No. 14-1 at 9-13.) The charges related to the kidnapping and murder of Latoya Cole, who was Moore's girlfriend and the mother of two of his children. (ECF No. 14-3 at 28.) At the jury trial, a witness from the central emergency dispatch for the City of Jackson testified that a 911 call was received in the early hours of December 9, 2007, from a phone number associated with 61 Sherwood Lane, Jackson, Tennessee. *Moore I*, 2011, 8566379, at *1. "The call was placed at 1:17:54 a.m. but ended before the dispatcher was able to answer the phone." *Id.* After calling the number back and receiving no answer, the 911 operator "dispatched Officer Buddy Crowell of the Jackson Police Department to the residence[.]" *Id.* The officer testified that he "arrived at the residence . . . approximately five minutes after the 9-1-1 call was placed." *Id.* "Officer Chris Falacho . . . was also dispatched to the residence." *Id.* The officers "found no signs of forced entry" and further found that "the front

door . . . was unlocked." *Id.* After entering the residence, they discovered a "phone . . . on the floor" of the kitchen, as well as a spot of blood next to the phone. *Id.* "In the master bedroom, Officer Crowell found a large wet stain of . . . urine on the bed and a large red stain that appeared to be blood[.]" *Id.* A search of the room revealed "a .25 automatic bullet shell casing near the middle of the bed, . . . human teeth and gum fragments on the bed, . . . a [blood-stained] blue towel[,] . . . a bullet hole that went through the comforter, sheets, mattress, box springs, and dust ruffle on the bed[,] . . . and a .25 caliber 'bullet lodged in a piece of carpet in the floor' underneath the bed." *Id.*

Wanda Cole, the victim's mother, testified that after learning of her daughter's disappearance shortly after the police arrived at the victim's residence, she called Moore to see if he knew where her daughter was. (ECF No. 14-3 at 96.) Moore answered his phone and denied having seen the victim over the few days preceding her disappearance. (*Id.* at 97.) He did not ask why the victim's mother was inquiring as to her daughter's whereabouts. (*Id.*) The victim's brother, Brandon Guyton, also called Moore in the early hours of December 9, 2007. (ECF No. 14-3 at 110.) Moore answered his phone and told Guyton that he had not seen or talked to the victim. (*Id.*) "Wanda Cole and Brandon Guyton repeatedly called the Defendant after they initially spoke with him; however, the Defendant did not answer or return their phone calls." *Moore I*, 2011 WL 856379, at *2. Moore's ex-wife testified that she received a phone call from her ex-husband in the early hours of December 9, 2007, and a text message from him asking if she loved him. (ECF No. 14-3 at 116, 121.)

"Dennis Smartt, who lived at 51-L Sherwood Lane with his wife and son, Brad Smartt," testified that, after returning "from work sometime between 12:00 and 12:300 a.m. on December

9, 2007," he observed a "'[s]ilver whitish, grayish' Ford Taurus parked in the center of the driveway that he shared with his neighbor." *Moore I*, 2011 WL 856379, at *2. Brad Smartt testified that he noticed a silver Ford Taurus parked in the driveway when he "arrived home between 12 and 12:30 a.m.[.]" *Id.* At around 1:00 a.m., he "was sitting in his car with his friend when he saw a black man . . . and woman walking into his yard." *Id.* He related that "the man was helping the woman like 'a football player on the field was injured and another player helped him off.'" *Id.* He described the woman as "[j]ell-o-like" as she held onto the man with "her arms around his neck." *Id.* "[T]he man helped the woman into the Ford Taurus," and "had to pick the woman's feet up in order to get her into the car." *Id.*

Later in the day on December 9, 2007, Moore received a phone call from law enforcement, and, soon after, "voluntarily came" to the Jackson Police Department. *Id.* at *3. He "had two cellular telephones in his possession." *Id.* He gave a DNA sample and consented to the search of his Ford Taurus. *Id.* The officer who drove the car to the rear of the building "noticed that '[t]he car was very clean' and 'smelled like it had been . . . freshly cleaned.'" *Id.* During the search of the car, automotive cleaning supplies were discovered, as was a "bloodstain 'located in the floorboard of the passenger seat . . . on the inside next to the console area.'" *Id.* DNA testing revealed that the blood at the victim's residence and the blood in Moore's car belonged to the victim. *Id.* at *4.

Several months after the victim disappeared, her body was found on the banks of Turk Creek in Pinson, Tennessee. *Id.* "The body was lying on the creek bank and was located 100 to 150 yards from Justin's Tomato Company." *Id.* An autopsy revealed "that the victim had a gunshot wound on the 'right side of her upper jaw[.]'" *Id.* Testing revealed that the bullet was

4

"fired from the same weapon" as the bullet that was "found in the carpet" at the victim's residence. *Id.* at *6.

Moore's cousin testified "that the Defendant used to stay at his house [in Pinson, Tennessee] for a week or a month in the summer when they were younger." *Id.* He stated that his home is "approximately one mile from Justin's Tomato Company." *Id.* Witnesses from Verizon Wireless and AT & T provided evidence that calls to and from Moore's two cell phones placed him in the vicinity of Turk Creek and Pinson around 2:00 a.m., along highways "north of Highway 412" at 2:16 and 2:39 a.m., and in Memphis "at 10:08 a.m." *Id.* at *8.

Defense witness Terrance Morrow, Moore's step-brother, testified that the Defendant "arrived at his home in Memphis sometime between 11:30 p.m. on December 8, 2007 and 12:30 a.m. on December 9, 2007, just as Mr. Morrow was leaving for a party." *Moore II*, 2013 WL 60001928, at * 2. When the witness returned home "around 4:00 or 4:30 a.m.," Moore "was asleep on [the] couch." *Id.* He "was gone when Mr. Morrow woke between 10:00 and 11:00 a.m." *Id.*

Moore was convicted as charged. *Moore I*, 2011 WL 856379, at *1. "The trial court merged the first degree premediated murder conviction with the felony murder conviction and ordered a sentence of life imprisonment for the resulting conviction." *Id.* The Defendant was given 20 years' incarceration for the aggravated kidnapping and "10 years for each for the tampering with evidence convictions," to be served concurrently. *Id.* An unsuccessful direct appeal was taken challenging the sufficiency of the evidence to convict. *Id.* at *9, 11.

Petitioner filed a *pro se* post-conviction petition in state court (ECF No. 14-22 at 8-17), which was amended by appointed counsel (*id.* at 31-32). Following an evidentiary hearing, the

post-conviction trial court denied relief. (*Id.* at 42-43.) The Tennessee Court of Criminal Appeals affirmed. *See Moore II*, 2013 WL6001928, at *7.

In July 2014, Moore filed a petition for writ of error coram nobis, asserting that newly discovered evidence in the form of photographs of the victim's residence and the Smartts' residence would have discredited the neighbors' testimonies. (ECF No. 14-29.) The Madison County Criminal court dismissed the petition (ECF No. 14-30), and the Tennessee Court of Criminal Appeals denied Moore's request for appellate review (ECF No. 14-32).

In September 2014, Moore filed a petition for habeas corpus relief in state court, arguing that his indictment and sentences were void and illegal. (ECF No. 40-7 at 8-14.) The petition was denied (ECF No. 41-1 at 69-70), and the decision was affirmed on appeal, *Moore III*, 2015 WL 1454356, at *3. Petitioner also filed a motion to reopen his post-conviction proceedings in September 2014, which was denied. (ECF No. 41-1 at 49-52.) The Tennessee Court of Criminal Appeals denied Petitioner's application for permission to appeal. (ECF No. 43-3.)

In March 2015, Moore filed a second petition for writ of coram nobis, asserting the existence of newly discovered evidence in the form of expert cell tower testimony. (ECF No. 41-1 at 129-33.) "The coram nobis court denied relief without a hearing, finding that the Petitioner's claim was time-barred, that the evidence was not newly discovered, and that it was not the type of evidence which might have produced a different result." *Moore VI* , 2015 WL 6873181, at *1. The Tennessee Court of Criminal Appeals affirmed, rejecting Petitioner's argument that he was "entitled to due process tolling of his untimely Petition for Writ of Error Coram Nobis." *Id.* at *2. Petitioner also filed in March 2015 a second motion to reopen his post-conviction proceedings. (ECF No. 41-1 at 73-81.) The motion was denied. (ECF No. 41-2 at 63-65.)

## DISCUSSION

The Petition, which was filed on July 15, 2014, presents the following claims:

Claim 1: The evidence was insufficient to support the convictions. (ECF No. 1 at 6, 20.)

Claim 2: Trial counsel rendered ineffective assistance by

Claim 2A: failing to interview and call alibi witnesses (*id.* at 7-8, 21);

Claim 2B: pursue "an investigation and DNA test along with [a] fingerprint test at the crime scene" (*id.* at 8);

Claim 2C: "utilize the . . . fact" that Petitioner's "car was inoperable at the time of the incident" (*id.* at 21);

Claim 2D: request a "Bill of Particular[s] for a more definite statement regarding the victim's time of death" (*id.* at 7, 21);

Claim 2E: "hire a ballistic expert to [demonstrate that] the hole in the bed [was] not [caused] by [a] bullet but by [a] rat" (*id.* at 21); and

Claim 2F: pursue Petitioner's claim that the blood found in his car was the victim's blood from a previous time he had injured her (*id.*).

Claim 3: Petitioner is "entitled [to a] new trial based on . . . newly discovered evidence." (*Id.* at 9, 22).

In February 2015, Respondent filed the state court record (ECF No. 14) and a motion to dismiss the Petition (ECF No. 13). The motion to dismiss asserted that most of the claims are without merit and that the remaining claims are procedurally defaulted. Petitioner did not respond to the motion to dismiss, although allowed to do so.

On April 13, 2015, Moore filed a motion to stay the case pending the resolution of his second petition for writ of coram nobis (ECF No. 16), as well as a motion seeking leave to amend the Petition (ECF No. 17), accompanied by a proposed amendment (ECF No. 17-1). He filed another motion to stay proceedings on April 30, 2015. (ECF No. 19.) On September 21, 2015,

the Court denied the motion to dismiss as "premature because Petitioner [had] not completed his efforts to exhaust his claims in state court" (ECF No. 20 at 4), denied the motion to amend the Petition because Moore did not use the Court's § 2254 form (*id.* at 5), stayed the proceedings (*id.* at 5-7), and administratively closed the case (*id.* at 7). The order directed Petitioner to "notify the Court within thirty days of the date on which all state-court collateral proceedings have concluded and to file an amended petition on the official form that includes the new issues that Petitioner seeks to raise." (*Id.*)

On June 6, 2016, the inmate filed his Supplemental Petition, in which he presents three claims:

> Claim 4: Trial counsel rendered ineffective assistance by failing to secure "an expert at the state's expense and/or hir[e] an expert" in "cell phone towers" to rebut the testimony of the State's cell phone experts. (ECF No. 31 at 6.)

> Claim 5: In light of the fact "that the bed [at the crime scene] was stained with urine and blood stains [and] human teeth and gum fragments," counsel was ineffective by "fail[ing] prior to trial to consult a DNA expert or blood spatter expert to establish that such a seriously injured person should have had more blood flowed from the body than only a drop of blood found in the vehicle." (*Id.* at 7-8.)

> Claim 6: Trial counsel rendered ineffective assistance by "fail[ing] to conduct an investigation and interview the witness who identified the description of the vehicle that transported the victim away from her apartment, which would have allowed him to obtain information that would have worked towards developing serious inconsistencies with the state's witness['] account and description of [the] vehicle." [2] (*Id.* at 6, 7 & n.1.)

On July 18, 2016, the Court reopened the case (ECF No. 37), after which Respondent filed supplements to the state court record (ECF No. 40; ECF No. 41; ECF No. 42; ECF No. 43), and an Answer to the Supplemental Petition (ECF No. 44). Petitioner filed a Reply on October 27,

---

[2] The Court has renumbered the claims.

2016.  (ECF No. 45.)  Upon review of the parties' submissions, the Court directed Respondent to respond to Claim 5.  (ECF No. 51 at 2.)   Respondent thereafter filed a Supplemental Answer asserting that the claim is procedurally defaulted.  (ECF No. 52 at 3-5.)  Petitioner filed a Supplemental Reply asserting that the procedural default of Claim 5 is excused by his post-conviction counsel's failure to raise it at the initial post-conviction proceedings.  (ECF No. 53 at 4.)  He also filed, under seal, a document styled "Ex Parte Motion Under Seal Motion for Expert Assistance and Appointment of Counsel."[3]  (ECF No. 54.)

Respondent acknowledges that Petitioner exhausted several of his claims in the state courts, but he posits that they are without merit.  (ECF No. 13-1 at 21-30.)  He further maintains that the remaining claims are procedurally defaulted.  (ECF No. 44 at 19-25; ECF No. 52 at 3-5.)  Petitioner argues that the claims are properly before the Court.  (ECF No. 31 at 9; ECF No. 45 at 1-5; ECF No. 53 at 4.)

## I.     Legal Standards

### A.  Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

---

[3]   In support of his assertion that his motion should be sealed, Petitioner cites cases involving criminal proceedings and the defendant's right, under certain circumstances, to file a motion under seal for expert funding.  (ECF No. 53 at 6-7.)  Because no such circumstances exist in this civil case, the Clerk is **DIRECTED** to unseal the document at ECF No. 54.

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th

Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits

of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

### B. Insufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *See Desert Palace, Inc., v. Costa*, 539 U.S. 9, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence

in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

### C. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome

13

the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

### D. Evidentiary Hearing

A petitioner seeking an evidentiary hearing on a claim that was not adjudicated on the merits must demonstrate "that he attempted to develop the factual basis for such claims with requisite diligence, *see Williams v. Taylor*, 529 U.S. 420, 430–37 (2000), or, under the standard described in [28 U.S.C.] Section 2254(e)(2)(A)(i)-(ii), show either that a new constitutional rule applies to his claims or that their factual predicate was previously undiscoverable through the exercise of due diligence." *Johnson v. Warden, Lebanon Corr. Inst.*, No. 1:12-CV-00560, 2014 WL 1382147, at *2 (S.D. Ohio Apr. 8, 2014) (citing *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464–65 (6th Cir. 2011)).

There is no controlling authority in this Circuit as to whether a petitioner who requests an evidentiary hearing on *Martinez* cause and prejudice must meet § 2254(e)'s requirements. *See Smith v. Carpenter*, No. 3:99-CV-0731, 2018 WL 317429, at *3–4 (M.D. Tenn. Jan. 8, 2018), *cert. of appealability denied sub nom. Smith v. Mays*, No. 18-5133, 2018 WL 7247244 (6th Cir. Aug. 22, 2018) (relying on inter-circuit cases for its holding that "petitioner's assertion that he can overcome default pursuant to *Martinez* is simply not a 'claim' to which § 2254(e)(2) would apply"). But even assuming § 2254(e)(2) does not bar a *Martinez* hearing, a petitioner does not have an absolute right to such a proceeding. *See e.g. Segundo v. Davis*, 831 F.3d 345, 351 (5th Cir. 2016) (refusing "to hold that *Martinez* mandates an opportunity for additional fact-finding in support of cause and prejudice," as such a ruling "would effectively guarantee a hearing for every petitioner who raises an unexhausted [ineffective assistance of trial counsel] claim and argues that *Martinez* applies.") Instead, where factual development is not precluded under § 2254(e)(2), the decision to hold a hearing is within the court's sound discretion. *Schriro v. Landrigan*, 550

U.S. 465, 468 (2007). A court may exercise its discretion to deny a hearing where the request for that procedure is not supported by specific allegations, *Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir. 2001), or the issues are resolvable on the state court record, *Schriro*, 550 U.S. at 474.

## II.     Claim 1

Petitioner asserts that the proof was insufficient to support his convictions because the evidence that he was the perpetrator was circumstantial. (ECF No. 1 at 6, 20.) He raised the issue on direct appeal, but the Tennessee Court of Criminal Appeals rejected the argument. *See Moore I*, 2011 WL 856379, at *11. Respondent argues that the state appellate court's decision easily passes muster under the AEDPA's deferential standards. (ECF No. 13-1 at 24.) The Court agrees.

In Tennessee, felony murder is defined as a "killing of another committed in the perpetration of or attempt to perpetrate any ... kidnapping." *Moore I*, 2011 WL 856379, at *10 (quoting Tenn.Code Ann. § 39–13–202(a)(2)). "First degree premeditated murder is defined as '[a] premeditated and intentional killing of another.'" *Id.* (quoting Tenn.Code Ann. § 39–13–202(a)(1)). Although "[p]remeditation means that the intent to kill must have been formed prior to the act itself," the prosecution need not prove that "the purpose to kill pre-exist in the mind of the accused for any definite period of time." *Id.* (quoting Tenn.Code Ann. 39–13–202(d)). "Factors from which a jury may infer premeditation include 'the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of the intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime; and calmness immediately after the killing.'" *Id.* (quoting *State v. Bland,* 958 S.W.2d 651, 660 (Tenn. 1997)).

A person commits especially aggravated kidnapping when he "knowing[ly] and unlawful[ly] remov[es] or confine[s] . . . another 'so as to interfere substantially with the other's liberty," and does so while "in possession of a deadly weapon." *Id.* (quoting Tenn. Code Ann. §§ 39–13–302(a), -304(a)(5)). The statute prohibiting tampering with evidence "states, in pertinent part, that it is 'unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to ... [a]lter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding." *Id.* (quoting Tenn.Code Ann. § 39–16–503(a)(1)).

In Moore's direct appeal, the Tennessee Court of Criminal Appeals set forth *Jackson*'s evidence-sufficiency standard and discussed the proofs required to convict him of the offenses for which he was charged. *Id.* at *9. The court rejected Petitioner's argument that the evidence was insufficient simply because it was circumstantial. "[C]ircumstantial evidence alone," the court held, "may be sufficient to support a conviction," and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Id.* at *10 (internal quotation marks and citations omitted).

Reviewing the proof submitted to the jury, the court found that,

[t]he evidence reflects that a black man parked his car near the victim's residence and that the victim allowed the man to enter her residence. This man somehow obtained the victim's small handgun and shot at the victim two times. One shot missed the victim, and the other shot hit her in the face, ultimately killing her. As the victim was bleeding and likely fleeing from the man, she went to the kitchen and attempted to summon help. The victim's call was disconnected before she could speak with the 9–1–1 dispatcher. The man then forced the victim to his car, while still maintaining control of her handgun. The victim was so badly wounded that she was unable to walk without the aid of the man; however, the victim was likely still

alive at that point. Once inside the car with the victim, the man drove to Pinson, Tennessee, where he disposed of the victim's body in Turk Creek.

The Defendant was intimately familiar with the victim, having fathered two children with her. As a teenager, the Defendant had spent a significant amount of time in the area in which the victim's body was found. The Defendant placed and received calls using cellular telephone towers that were located near where the victim's body was found. These calls were placed and received around the time that the victim was murdered and transported to Turk Creek. Additionally, knowing that he was suspected in the victim's disappearance, the Defendant attempted to thoroughly clean his car before arriving at the Jackson Police Department for questioning. However, a small amount of blood matching the victim's DNA profile was still found in the Defendant's car. The victim's weapon, which was consistent with the type of weapon used in the murder and was kept at her residence, was never found.

*Id.* at *11.

On this record, the appellate court concluded that, "[w]hile the evidence of the Defendant's guilt was entirely circumstantial, the evidence was sufficient to establish that the Defendant shot the victim in the face, ultimately killing her, and then forced her to leave her residence, while she was still alive, before disposing of her body and attempting to destroy any evidence that would implicate him in her murder." *Id.* The court therefore affirmed the "convictions of first degree premeditated murder, felony murder, aggravated kidnapping, and two counts of tampering with evidence." *Id.*

Because the Tennessee Court of Criminal Appeals correctly identified *Jackson*'s standards and applied them to the facts of Petitioner's case, its evidence-sufficiency determination is not "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Petitioner has also failed to establish that the appellate court's factual determinations are unreasonable. Firstly, he does not identify any clear and convincing evidence to undermine the court's findings regarding the events and circumstances surrounding the crimes. Secondly, as the appellate court reasonably held, those facts give rise to the reasonable inference that Moore was the perpetrator of the crimes charged.

Petitioner objects that the evidence was solely circumstantial, essentially arguing that the inference, by itself, is insufficient and that the State was required to produce direct evidence of his guilt. The argument is misplaced. Foremost, it is clearly established Supreme Court law that *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ( "[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *Holland v. United States*, 348 U.S. 121, 140 (1954) (holding "[c]ircumstantial evidence ... is intrinsically no different from testimonial evidence" and is sufficient to convict, provided that the jury is convinced beyond a reasonable doubt). Moreover, consistent with *Jackson*'s commands, the Tennessee Court of Criminal Appeals gave "full play," *Jackson*, 443 U.S. at 319, to the jury's responsibility to resolve conflicts in the evidence and to draw reasonable inferences from the proofs. The state appellate court's determination that the evidence was sufficient to sustain Moore's convictions is, therefore, not an unreasonable application of *Jackson*'s standards. Claim 1 is **DENIED**.

### III. Claim 2

Petitioner asserts that trial counsel rendered ineffective assistance by failing to (1) interview and call alibi witnesses (ECF No. 1 at 7) (Claim 2A); pursue DNA and fingerprint testing

of the crime scene (*id.* at 8) (Claim 2B); "utilize the . . . fact" that Petitioner's "car was inoperable at the time of the incident" (*id.* at 21) (Claim 2C); request a "Bill of Particular[s] for a more definite statement regarding the victim's time of death" (*id.*) (Claim 2D); "hire a ballistic expert" (*id.*) (Claim 2E); and pursue Petitioner's claim that the blood found in his car was the victim's blood from a previous time "he and the victim had . . . been involved in a domestic dispute" (*id.*) (Claim 2F). Respondent argues that Claim 2B is procedurally defaulted and Claims 2A and 2C through 2F are without merit. (ECF No. 13-1 at 25-30.) The arguments are well taken.

### A. Claim 2A: Alibi Witnesses

Petitioner complains that counsel was ineffective by failing to interview and call witnesses who would have supported an alibi defense. (ECF No. 1 at 7.) He unsuccessfully advanced the issue in his post-conviction appeal. *See Moore II*, 2013 WL 6001928, at *6. Respondent argues that state appellate court's rejection of the claim survives deferential review under the AEDPA.[4] (ECF No. 13-1 at 25-26.)

In Moore's post-conviction appeal, the Tennessee Court of Criminal Appeals found that Petitioner did not meet either prong of *Strickland's* test. *Moore II*, 2013 WL 6001928, at *6. The court's review of the record showed that Moore testified at the post-conviction hearing that counsel should have called Steve Clark and Ashley Hensew to testify on his behalf. *Id.* at *4. According to Petitioner, "Steve Clark . . . would have testified that the petitioner's car had been inoperable

---

[4] Prior to addressing the issues set forth in Claims 2A and 2C through 2F, the Tennessee Court of Criminal Appeals announced that *Strickland*'s standards governed its analysis. *See Moore II*, 2013 WL 6001928, at *5-6. The appellate court's determinations that those claims are without merit are therefore not contrary to clearly established Supreme Court law. *See Williams*, 529 U.S. at 406.

on the day before the crime, and Ashley Hansew . . . would have testified [that Moore] was with her at the time of the crime." *Moore II*, 2013 WL 6001928, at * 4 (footnote omitted).

The appellate court rejected Petitioner's assertion that counsel performed deficiently, finding, instead, that "the evidence amply support[ed] the post-conviction court's finding that trial counsel conducted a thorough investigation of the witnesses given to him by petitioner." *Id.* Specifically, "[t]rial counsel testified that the petitioner wanted an alibi defense and that trial counsel went on a series of 'wild goose chases,' in which he was either unable to locate the witnesses provided by the petitioner, found that the witnesses were unwilling to communicate, or found that the witnesses's testimony did not provide an alibi." *Id.* at *2.

The Tennessee Court of Criminal Appeals also concluded that Petitioner failed to establish that counsel's conduct prejudiced him. *Id.* at *6. Specifically, because he did not call the putative witnesses to testify at the post-conviction hearing, Moore could not establish that their testimonies would have made any difference to the outcome of his case. *Id.*

The appellate court's conclusion that counsel did not render ineffective assistance, and the factual findings on which that determination is based, are not unreasonable. Firstly, the court was not unreasonable in refusing to disturb the post-conviction trial court's determination that counsel credibly testified to the extensive scope of his investigation of witnesses. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."). Secondly, Petitioner does not identify any clear and convincing evidence to undermine the court's factual finding that no putative witnesses were produced at the post-conviction hearing to establish the counsel's failure to call them prejudiced him. This Court's

review of the record confirms that finding. Without testimony from the putative witnesses, Petitioner could not establish that their testimonies would have made a difference in the outcome of the trial. *See e.g. Moreland v. Bradshaw*, 635 F. Supp. 2d 680, 712 (S.D. Ohio 2009) (holding that petitioner's failure to present evidence that a witness's "testimony would have benefitted" him was "fatal to any attempt to establish that 'but for counsel's alleged deficiencies,' the results of the proceedings would have been different"), *aff'd*, 699 F.3d 908 (6th Cir. 2012).

Accordingly, the ruling by the Tennessee Court of Criminal Appeals that counsel did not render ineffective assistance relating to the investigation of alibi witnesses is patently reasonable. Claim 2A is **DENIED**.

### B. Claim 2B: DNA and Fingerprint Analyses

Petitioner asserts that counsel rendered ineffective assistance by failing to provide "DNA tes[ting] along with fingerprint test[ing] at the crime scene." (ECF No. 1 at 8.) Respondent argues that the claim is not properly before the Court because it is procedurally defaulted. (ECF No. 13-1 at 26.) The Court agrees.

In his post-conviction appeal, Moore did not argue that counsel was ineffective for failing to secure DNA and fingerprint testing from the crime scene. (*See* ECF No. 14-25 at 16-21.) Because the time for raising the issue in the state courts has passed, the claim is procedurally defaulted. Petitioner does not assert cause for his failure to properly raise the issue in state court.[5] Claim 2B is therefore **DISMISSED**.

---

[5] In Claim 5, Petitioner repeats his assertion that counsel should have secured DNA tests of the crime scene, but he adds that such testing would have "establish[ed] that such a seriously injured person should have had more blood flowed from the body than only a drop of blood found in the vehicle." (ECF No. 31 at 8.) The Court addresses that assertion in its discussion of Claim 5.

### C. Claim 2C: Inoperable Vehicle

Petitioner alleges that he told counsel "that his car was inoperable at the time of incident," and that "counsel failed to utilize the given fact." (ECF No. 1 at 21.) He raised the issue in his post-conviction proceeding, but the Tennessee Court of Appeals affirmed the lower court's determination that the claim was without merit. *See Moore II*, 2013 WL 6001928, at *6. Upon review of the post-conviction record, the appellate court found that counsel investigated

> . . . Ron Burrough, who put a windshield into a silver Taurus for a black male in September 2007; . . . Donald Steve Clark, who told the defense that he had not done any work on the petitioner's car in December 2007 and that he would not perjure himself; . . . Chantell Moore, who told investigators that the petitioner's vehicle had not been working on December 6 or 7, 2007, although other evidence established that the petitioner drove his vehicle to the police station after the murder[.]

*Id.* at *3 (footnote omitted). In light of counsel's testimony, the appellate court held "that trial counsel conducted a thorough investigation of the witnesses given to him by the petitioner and that his performance was not deficient." *Id.* at *6.

The Tennessee Court of Criminal Appeals' decision is not based on unreasonable factual determinations or an unreasonable application of *Strickland*'s standards to the facts. This Court's review of the state court record confirms that trial counsel testified that he and the defense investigator interviewed witnesses who could provide information about his client's vehicle, but that the individuals who had worked on the car could not say that it was inoperable on the day of the crimes. (ECF No. 14-23 at 20, 23.) Moreover, as the appellate court found, the undisputed evidence was that Petitioner drove his car to the police station the day after the murder. (ECF No. 14-3 at 85.) Given that factual record, the Tennessee Court of Appeals did not unreasonably conclude that counsel did not render ineffective assistance regarding Petitioner's assertion that the car was inoperable on the day of the crimes. Claim 2C is therefore **DENIED**.

### D. Claim 2D: Bill of Particulars

Petitioner alleges that he asked counsel "to file a Bill of Particular[s] for a more definite statement regarding the victim's time of death," but that counsel "failed to do so." (ECF No. 1 at 21.) Petitioner raised the claim in his post-conviction proceedings, and the Tennessee Court of Criminal Appeals rejected it. *See Moore II*, 2013 WL 6001928, at *6. The court found that Moore "acknowledged" at the post-conviction hearing "that his trial counsel did file a motion regarding the time and place of death and that he was aware of the information which he sought to be clarified in a bill of particulars." *Id.*

This Court's independent review of the state court record confirms that counsel filed such a motion (ECF No. 14-1 at 27-28), and that, in any event, Petitioner knew the information (ECF No. 14-23 at 159-60, 164). The state appellate court's ruling that counsel did not render ineffective assistance regarding a bill of particulars, and the factual determinations on which the ruling is based, are therefore not unreasonable. Claim 2D is **DENIED**.

### E. Claim 2E: Ballistics Expert

Petitioner asserts that counsel provided ineffective assistance by failing "to hire a ballistic expert to" show that "the hole in [the victim's] bed [was not created] by [a] bullet but by [a] rat." (ECF No. 1 at 21.) He raised the claim in his state post-conviction case, but the Tennessee Court of Criminal Appeals rejected it. *See Moore II*, 2013 WL 6001928, at *6. The court determined that Moore failed to establish that he was prejudiced by counsel's failure to hire such an expert because he did not "present that witness at the post-conviction hearing." *Id.*

The state appellate court's ruling is not based on an unreasonable determination of the facts or an unreasonable application of *Strickland*'s standards to the facts. A review of the post-

conviction hearing transcript confirms that Petitioner did not present a ballistics expert to establish

that such testimony would have been material to the defense. Accordingly, the Tennessee Court

of Criminal Appeals' determination that Moore failed to show that he was prejudiced by counsel's

conduct is not unreasonable. Claim 2E is therefore **DENIED**.

### F. Claim 2F: Blood in Car

Petitioner complains that counsel was ineffective by failing to present evidence that the

blood in his car was the victim's blood from a prior domestic dispute. (ECF No. 1 at 21.) He

unsuccessfully raised that claim before the Tennessee Court of Appeals. *See Moore II*, 2013 WL

6001928, at *7. The court held that counsel's testimony established that he made a "plausible

strategic choice" by deciding not to present domestic dispute evidence to the jury. *Id.* Specifically,

> counsel testified that he investigated [a prior] incident and found records of
> altercations in two counties but felt introducing a pattern of the petitioner's violent
> behavior to the victim would have been poor trial strategy, particularly in light of
> the petitioner's insistence that he had nothing to do with the murder.

*Id.* at *2.

The Tennessee Court of Criminal Appeals' determination that counsel did not render

ineffective assistance is not unreasonable. As counsel testified, had evidence of Moore's prior

violence toward the victim been introduced, it "could have established a pattern or motive or . . .

common scheme." (ECF No. 14-3 at 8.) Counsel's decision to avoid that risk was a reasonable

strategic decision. Claim 2F is **DENIED**.

### IV.    Claim 3

Petitioner asserts that he has "newly discovered evidence" that entitles him to a new trial.

(ECF No. 1 at 9, 22.) The evidence consists of information that the slope of the road between the

victim's residence at 61 Sherwood Lane and the neighbors' home at 51 Sherwood Lane was 20

degrees, and "that it was more than 200 ft from '61' to the [d]riveway of '51.'" (ECF No. 1 at 22.)

He argues that this evidence would have rebutted the neighbor's testimony that, in Petitioner's

words, he saw a "black man . . . make a dead-woman walk[]." (*Id.*)  According to Moore, such a

physical maneuver would not have been possible given the "20% slope" and the amount of ground

to cover.  (*Id.*)  Respondent argues that the claim is procedurally defaulted.  (ECF No. 13-1 at 31.)

Moore raised the claim for the first time in his first coram nobis petition before the Madison

County Circuit Court.  (ECF No. 14-29.)  The coram nobis court dismissed the petition as untimely

under state law (ECF No. 14-30), and the Tennessee Court of Criminal Appeals affirmed, *Moore*

*IV*, 2015 WL 1647961, at *3.  The appellate court agreed with the lower court that the petition was

filed beyond the one-year statute of limitations set by Tenn. Code Ann. § 27–7–103, and further

found that Moore was not entitled to due process tolling of the limitations period:

> The one-year statute of limitations may be tolled on due process grounds if the
> petitioner seeks relief based upon newly discovered evidence[.]" . . . Generally,
> "before a state may terminate a claim for failure to comply with ... statutes of
> limitations, due process requires that potential litigants be provided an opportunity
> for the presentation of claims at a meaningful time and in a meaningful
> manner." *Burford v. State,* 845 S.W.2d 204, 208 (Tenn. 1992). The Burford rule
> consists of three steps:
>
> > (1) determine when the limitations period would normally have begun to
> > run; (2) determine whether the ground for relief actually arose after the
> > limitations period would normally have commenced; and (3) if the grounds
> > are "later-arising," determine if, under the facts of the case, a strict
> > application of the limitations period would effectively deny the petitioner a
> > reasonable opportunity to present the claim.
>
> *Sands v. State,* 903 S.W.2d 297, 301 (Tenn. 1995).
>
> Appellant's judgments were entered in February and March of 2009, and appellant did not
> file his petition for writ of error coram nobis until July of 2014 more than four years after
> the one-year statute of limitations expired. Evidence in the form of photographs of the two
> residences and measurements as illustrated in the photographs is not "later-arising," and

appellant was not prevented from presenting the claim at an earlier time. Appellant failed to establish that the evidence was unavailable to him or trial counsel at the time of trial. Accordingly, the appellant's claim is time-barred, and due process does not warrant tolling of the statute of limitations.

*Id.* at *3.

Tennessee's one-year statute of limitations for post-conviction relief is an independent and adequate state procedural rule which will bar federal habeas review of a claim absent a showing of cause and prejudice, or actual innocence. *Hutchison v. Bell*, 303 F.3d 720, 735-39 (6th Cir. 2002). Moreover, the due process exception to the statute of limitations "does not render [the] procedural rule[] inadequate." *Id.* at 739. Claim 3 is therefore procedurally defaulted.

Moore argues that the procedural default is overcome by newly discovered evidence of his "factual[] innocen[ce]." (ECF No. 1 at 22.) He posits that, "had th[e] newly discovered evidence" of the road's slope and the distance between the driveways been "introduced at trial, the . . . outcome more than likely [would have been] in [his] favor." (*Id.*) The inmate also asserts that the procedural default should be excused because appellate counsel was ineffective by failing to raise the issue on appeal. (*Id.* at 9.) Both arguments are without merit.

A gateway claim of actual innocence to overcome a procedural default "requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner must show that, had the new evidence been submitted at trial, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

Moore has not raised a plausible gateway claim of actual innocence. For one thing, the information about the road's slope and the distance between the driveways is not newly discovered

evidence because it was available at the time of trial. Moreover, because the jury heard other evidence suggesting that Moore was the perpetrator, and because the slope and distance information would, at best, have tended only to raise an issue about Brad Smartt's credibility, it is not more likely than not that no reasonable juror would have convicted Moore had they heard the evidence.

As for his assertion that appellate counsel's failure to raise the claim is cause to excuse the default, Petitioner has not shown that he raised that appellate-counsel-ineffective-assistance claim in his post-conviction proceeding. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (an "ineffective-assistance-of-counsel claim asserted as cause for [a] procedural default . . . can itself be procedurally defaulted") And even if he were to blame post-conviction counsel for *that* failure, the ineffective assistance of post-conviction counsel is not cause to excuse the default of an appellate-counsel-ineffective-assistance claim. *See Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). As Petitioner has not overcome or established cause to excuse the procedural default, Claim 3 is **DISMISSED**.

## V. Claim 4

Petitioner asserts that trial counsel was ineffective in failing to secure an expert in cell phone tower data. (ECF No. 31 at 7.) He alleges that a "forensic expert [would provide an] explanation that the cell phones in petitioner's possession [on the day of the crimes] did not at any time have activity on any cell tower sector that would have covered the location where the body was found." (*Id.*) In support, he has attached the declaration of Larry E. Daniel, "a digital forensic examiner," who "re-plotted the cell phone activity for the two phones alleged to be in the possession of Mr. Moore during the early hours of December 9th 2007." (ECF No. 32-2 at 1.)

Based on his review of the data, Daniel concludes that Petitioner "would not have been in the area of Turk's creek near Justin Tomato Company during the times that his cell phones were in use." (*Id.* at 1-2.)  Instead, "[t]he most likely path of travel for the phones beginning with the last phone call on the Verizon phone in southern part of Jackson, TN, would have been south on Hwy 18, then east on Hwy 100 and finally turning north on Hwy 22 to Lexington.  None of the cell tower sectors used put the ATT Wireless cell phone in the area of Turk's Creek near the Justin Tomato Company."  (*Id.* at 2.)

Respondent argues that Moore procedurally defaulted the ineffective assistance claim by failing to present it in his post-conviction proceedings.  (ECF No. 44 at 19, 22-23.)  Petitioner does not deny that he did not properly present the claim to the state courts, but argues, pursuant to *Martinez*, 566 U.S. at 16-17, that the default should be excused because post-conviction counsel rendered ineffective assistance by failing to raise the claim.  (ECF No. 31 at 9 ("[P]ost[-]conviction counsel not raising and including [the claim] in his amendment of the petition was the cause for the claim not being raised in the initial post[-]conviction proceeding."); ECF No. 45 at 1 ("As a result of the post-conviction-counsel not raising the claim in an amendment to his petition, resulted in the default."), 5 (arguing application of *Martinez*).)  The argument is unavailing.

As previously discussed, the ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim.  *Martinez*, 566 U.S. at 17. To establish cause in that context, a petitioner must show that his post-conviction counsel "was ineffective under the standards of *Strickland*."  *Id.* at 14.  He must therefore demonstrate that post-conviction counsel performed deficiently and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the [post-conviction] proceeding would have been

different." *Strickland*, 466 U.S. at 694. A petitioner must also establish that the "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that [he] . . . must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14.

Petitioner's claim that trial counsel rendered ineffective assistance by failing to hire a cell tower data expert is not substantial. Trial counsel testified at the post-conviction hearing that "[P]etitioner wanted an alibi defense[.]" *Moore II*, 2013 WL 6001928, at * 2. As the state court explained in denying Moore's second motion to reopen his post-conviction proceedings, Petitioner's expert's testimony would have undermined that defense:

> [T]he expert opinion provided by the defendant clearly states that the defendant would have been in Jackson and then in Lexington, Tennessee. This would destroy the defendant's own case as he was relying upon the defense of alibi. In the trial the defendant called his brother to testify that the defendant was in Memphis at the home of his brother at the time of the homicide.[6]

(ECF No. 41-2 at 64.)

In fact, counsel testified at the post-conviction hearing that the State's cell phone evidence, which established that Petitioner "wasn't in Memphis" at the time of the crimes, created a problem for the alibi defense. (ECF No. 14-23 at 57.) He explained, however, that he "honored Mr. Moore's request" to "present[] to the jury" the "issue of alibi." (*Id.* at 56-57). On this record, Petitioner cannot overcome the presumption that counsel's decision not to call an expert who would have corroborated the State's proof that Petitioner was not in Memphis at the time of the crimes was sound trial strategy. Claim 4 is **DISMISSED**.

---

[6] In his appeal from the denial of the motion to reopen the post-conviction proceeding, Petitioner did not advance his ineffective assistance of counsel claim as an issue presented. (*See* ECF No. 41-2 at 84.)

## VI.    Claim 5

Petitioner alleges that "that the [victim's] bed was stained with urine and blood stains [and] human teeth and gum fragments," and that counsel was ineffective by "fail[ing] prior to trial to consult a DNA expert or blood spatter expert to establish that such a seriously injured person should have had more blood flowed from the body than only a drop of blood found in the vehicle." (ECF No. 31 at 7-8.)  Respondent argues that the claim is procedurally defaulted.  (ECF No. 52 at 4-5.)  Petitioner concedes that he defaulted the claim, but maintains, pursuant to *Martinez*, that post-conviction counsel was ineffective in failing to pursue the issue in the post-conviction trial court.  (ECF No. 53 at 6-10.)  Relatedly, in his motion for expert assistance and the appointment of counsel, Petitioner asserts that he needs "a forensic expert in the field of blood spatter evidence, to assist in the investigation and substantiation of . . . Claim #5," and that he requires counsel to "assist [him] with locating and assisting an expert[.]"   (ECF No. 54 at 2, 8.)  Given Petitioner's invocation of *Martinez*, the Court construes the motion as requesting an evidentiary hearing and the assistance of counsel for the purpose of helping him to establish that the claim is "substantial" under *Martinez*.[7]

The Court concludes, for two reasons, that the procedural default is unexcused and that an evidentiary hearing and the appointment of an expert and an attorney are not warranted.  First, Petitioner has not explained how DNA testing would have helped establish the extent of the

---

[7]  Petitioner also asks that counsel be appointed to assist him "with further investigation of other potential issues and presentation of those claims; and, to assist this Court with understanding the claims presented."  (ECF No. 54 at 1, 7.)   The request is not well taken.  Appointment of counsel must be made "where the interests of justice or due process so require."  *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986).  Pursuing unspecified additional claims, especially at this late date, does not meet that threshold.

victim's injuries. Therefore, insofar as Claim 5 asserts that counsel was ineffective in failing to secure DNA testing, the claim is not well pled. *See Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir. 2001) (quoting *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991)) ("[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the State to respond to discovery requests or to require  evidentiary hearing."); *Payne v Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000) (citing *Calderon v. U.S. Dist. Ct. for N.D. Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996)) ("[A] petitioner may not embark on a fishing expedition intended to develop claims for which there is no factual basis.")

Second, the state court record conclusively shows that Petitioner's assertion that trial counsel was ineffective by failing to hire a blood spatter expert is not a substantial claim. Although one might imagine how blood spatter evidence could shed light on the severity of the victim's wounds, the jury heard evidence that the damage inflicted on the victim was severe and that it resulted in profuse bleeding which led to her death. (*See* ECF No. 14-2 at 57, 80-81, 84 (teeth and gum fragments, urine, and blood were found at the crime scene); ECF No. 14-5 at 15-1, 25-31 (medical examiner testified that the cause of death was a gunshot wound to the jaw/head, that caused bleeding and "hemo aspiration").) Petitioner has not explained how blood spatter testimony would have added anything appreciable to that evidence. In addition, against proofs establishing that the victim bled to death, defense counsel emphasized during his closing argument that there was only "a very small amount of blood in [the Defendant's] vehicle," which, he reasoned, could have come from a commonplace injury such a "nosebleed[.]" (ECF No. 14-6 at 155.) The jury implicitly rejected the argument. Accordingly, Petitioner cannot show that

counsel's failure to secure the testimony of a blood spatter expert would likely have changed the outcome of the trial.

Because the state court record shows that the claim is not substantial, the procedural default is not excused and an evidentiary hearing and the appointment of an expert and an attorney are not warranted. Petitioner's motion is **DENIED** and Claim 5 is **DISMISSED**.

## VII. Claim 6

Petitioner asserts that trial counsel rendered ineffective assistance by failing to investigate and interview the victim's neighbors, Dennis and Brad Smartt. (ECF No. 31 at 7 & n1.) He alleges that an investigation and interview "would have allowed [counsel] to obtain information that would have worked towards developing serious inconsistencies with the state's witness[es'] account[s] and description[s] of the vehicle." (*Id.* at 6.) He also maintains that counsel should have reviewed the crime scene and cross-examined Bradley Smartt about the "uneven slope [of the road] and the effect that it had on Bradley Smartt viewing the vehicle." (*Id.* at 7 n.1.)

Respondent argues that the claim is procedurally defaulted. (ECF No. 44 at 24-25.) Petitioner concedes that he did not raise the claim in state court but maintains, pursuant to *Martinez*, that post-conviction counsel was ineffective in failing to present the claim. (ECF No. 31 at 8 ("[P]ost-conviction counsel did not include [the] claim" in the post-conviction petition).) Petitioner's reliance on *Martinez* is unavailing because the claim is not substantial.

"Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." *Crawford v. United States*, No. CIV. 04-CV-71543, 2008 WL 2948055, at *7 (E.D. Mich. July 31, 2008) (quoting *Dunham v. Travis,* 313 F.3d 724, 732 (2d Cir. 2002) (inner quotation

33

marks omitted)).  As the Sixth Circuit has made clear, cross-examination falls "within the area of trial tactics and strategy that should not be subjected to second guessing and hindsight" by the court.  *United States v. Steele,* 727 F.2d 580, 591 (6th Cir. 1984).

Insofar as Petitioner, here, insists that counsel should have investigated and confronted the Smartts with their prior inconsistent statements, he fails to show that the claim is substantial because he has not identified those previous statements.  Without more, he cannot demonstrate that counsel performed deficiently.  *See Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim" on federal habeas review).  If Moore means to suggest that counsel did not cross-examine Brad Smartt about his preliminary hearing testimony, the record shows that counsel did, in fact, confront the witness about his failure at that proceeding to "mention anything about . . . somebody [being] carr[ied] like a football player.[.]"  (ECF No. 14-3 at 20.)

Additionally, the state court record undermines Petitioner's assertion that counsel performed deficiently by failing to cross-examine Bradley Smartt about the slope of the road and its effect on Smartt's ability to see the Ford Taurus.  The trial transcript shows that counsel cross-examined Bradley Smartt regarding his ability to see through the tinted glass of his sister's car, in which he and a friend were sitting while smoking marijuana.  (*Id.*)  Smartt conceded that his vision may have been impaired by those conditions.[8]  (*Id.* at 18-22.)  Additional cross-examination about the slope of the road would have added little to the witnesses' admission.  Petitioner therefore has failed to rebut the strong presumption that counsel's conduct in failing to use that information on

_____

[8]  Counsel also succeeded in securing Dennis Smartt's acknowledgement that he could only say that the car in the photo was the same make, model, and color of the car he had observed in the driveway.  (ECF No. 14-2 at 140.)

cross-examination fell within the wide range of reasonable professional assistance, or that counsel's omission was of any consequence. The claim is, thus, not substantial.

Because the procedural default is unexcused, the claim is not properly before the Court. Claim 6 is therefore **DISMISSED**.

For these reasons, the Petition and the Supplemental Petition are **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition and the Supplemental Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[9]

> **IT IS SO ORDERED**.

> **s/ S. Thomas Anderson**
> S. THOMAS ANDERSON
> CHIEF UNITED STATES DISTRICT JUDGE

> Date: January 29, 2020.

---

[9] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.